IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FRANK FAHY,

    Plaintiff,

v.

ORPHEOS TARBOX, et al.,

    Defendants.

No. C-09-1420 MMC

**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT STEINER; DISMISSING STATE LAW CLAIMS WITHOUT PREJUDICE**

    Before the Court is the Motion for Summary Judgment, filed June 10, 2011 by defendants Timothy Buelow ("Officer Buelow"), Steven Stocker ("Sgt. Stocker"), Michael Hennessey ("Sheriff Hennessey"), and the City and County of San Francisco, sued herein in its own name and as the San Francisco Police Department and the San Francisco Sheriff's Department ("the City").[1]  Plaintiff Frank Fahy ("Fahy"), appearing pro se, has filed opposition, to which the moving defendants have replied.  Additionally, both Fahy and the moving defendants have filed, with leave of court, supplemental memoranda.  Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.

---

[1] The caption of the motion lists Orpheos Tarbox ("Officer Tarbox") as an additional defendant.  On May 28, 2010, all claims against Officer Tarbox were dismissed.  (See Minutes, filed May 28, 2010.)

## BACKGROUND

In the operative complaint, the First Amended Complaint ("FAC") filed October 9, 2009, Fahy alleges that he and defendant Alec Steiner ("Steiner") were involved in a minor automobile accident on April 10, 2008. (See FAC ¶¶ 1-2.) According to Fahy, Steiner made "false statement[s]" to the San Francisco Police Department about the circumstances of the accident, which, in turn, caused Fahy to be arrested without probable cause. (See FAC ¶ 63.) Fahy further alleges that he was subjected to excessive force and was deprived of medical care while at the police station (see id.), and that, later while at the county jail, he was subjected to unreasonable conditions of confinement (see FAC ¶ 62).

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact. Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." See Celotex, 477 U.S. at 324 (internal quotation and citation omitted). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted). "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion." See Matsushita, 475 U.S. at 587

1  (internal quotation and citation omitted).

## DISCUSSION

In his complaint, Fahy alleges claims arising under federal and state law.

**A. Federal Claims**

    **1. First Claim for Relief ("Unreasonable Search and Seizure")**

In his First Claim for Relief, Fahy alleges he was arrested without probable cause, in violation of 42 U.S. C. § 1983, and names as defendants thereto Officer Buelow, who conducted an investigation at the scene of the accident, and Steiner.[2]

For the reasons stated in the Court's July 12, 2011 order, the Court finds the evidence offered by the moving defendants establishes that Officer Buelow had probable cause to believe Fahy had violated section 20002(a) of the California Vehicle Code. Fahy has failed to offer any evidence to the contrary, and to the extent Fahy contends he did not actually violate § 20002(a), such argument is irrelevant to the issue of probable cause. See Michigan v. DeFillippo, 443 U.S. 31, 36 (1979) ("The validity of the arrest does not depend on whether the suspect actually committed a crime.").

Accordingly, the moving defendants have shown that Officer Buelow is entitled to summary judgment on the First Claim for Relief.

With respect to Steiner, the Court, in its July 12, 2011 order, directed Fahy to show cause why summary judgment in Steiner's favor should not be entered, on the ground that no evidence appeared to exist to support a finding that Steiner is a state actor. In his supplemental filings, Fahy fails to submit any such evidence. Although Fahy cites authority for the proposition that a private party can be held liable for conspiring with a state actor to deprive a plaintiff of his civil rights, Fahy offers no evidence to support a finding that Steiner conspired with Officer Buelow, or with any other state actor, to cause Fahy to be deprived of a federal right.

//

---

[2]Although Officer Tarbox is named as an additional defendant to the First Claim for Relief, all claims against Officer Tarbox, as noted, have been dismissed.

3

1   Accordingly, Steiner is entitled to summary judgment.[3]

**2. Second Claim for Relief ("Conspiracy to Violate Plaintiff's Civil Right[s]")**

In his Second Claim for Relief, Fahy alleges that Officer Buelow conspired with Sgt. Stocker, in violation of § 1983, to cause Fahy to be arrested without probable cause, subjected to excessive force, and denied medical care.

For the reasons stated above with respect to the First Claim for Relief, to the extent the Second Claim for Relief is based on a conspiracy to arrest Fahy without probable cause, defendants are entitled to summary judgment, for the reason that the undisputed evidence establishes probable cause existed to believe Fahy violated § 20002(a).

As set forth below with respect to the Third Claim for Relief, to the extent the Second Claim for Relief is based on a conspiracy to cause Fahy to be subjected to excessive force, defendants are entitled to summary judgment, for the reason that Fahy cannot establish he was subjected to excessive force.

As set forth below with respect to the Sixth Claim for Relief, to the extent the Second Claim for Relief is based on a conspiracy to deprive Fahy of medical care, defendants are entitled to summary judgment, for the reason that Fahy cannot establish either Officer Buelow or Sgt. Stocker knew of and disregarded an excessive risk to Fahy's health.

Accordingly, the moving defendants have shown Officer Buelow and Sgt. Stocker are entitled to summary judgment on the Second Claim for Relief.

**3. Third Claim for Relief ("Excessive Force")**

In his Third Claim for Relief, Fahy alleges Officer Buelow and Sgt. Stocker, in violation of § 1983, used excessive force in connection with his arrest. As Fahy clarified during his deposition, the basis for his claim of excessive force is that, after he was arrested at the police station, he was handcuffed and the handcuffs were "secured to the wall" such that Fahy was unable to "stand up" or "sit down" for "an hour or more." (See

---

[3] Steiner is not named as a party to any claim other than the First Claim for Relief.

4

1  Lewis Decl. Ex. A at 79:2-24, 90:1-13.)  Fahy also testified he did not complain to the
2  officers about the handcuffs (see id. Ex. A at 91:18-25), and did not thereafter seek any
3  medical care as a result of his having been handcuffed (see id. Ex. A at 191:25-192:5).
4  The moving defendants argue they are entitled to summary judgment because Fahy lacks
5  evidence to support a finding of any cognizable injury.

6  　　　As defendants correctly observe, a claim for excessive force arising from the
7  application of handcuffs requires a showing of injury.  See Arpin v. Santa Clara Valley
8  Transportation Agency, 261 F.3d 912, 922 (9th Cir. 2001) (affirming grant of summary
9  judgment as to claim of excessive force arising from application of handcuffs, where plaintiff
10 did "not provide any medical records to support her claim that she suffered injury as a
11 result of being handcuffed"); Ha v. City of Liberty Lake, 2010 WL 4065491, *6 (E.D. Wash.
12 2010) (holding "handcuffing is not excessively forceful unless supported by factual
13 allegations detailing specific actions that caused specific injuries in the application of the
14 handcuffs") (citing cases); see also, e.g., Wall v. County of Orange, 364 F.3d 1107, 1110,
15 1112 (reversing finding of summary judgment as to claim of excessive force arising from
16 application of handcuffs, where plaintiff offered evidence from neurologist that plaintiff, as
17 result of handcuffs, sustained "injury to his right medial nerve"); Palmer v. Sanderson, 9
18 F.3d 1433, 1436 (9th Cir. 1993) (holding, where officer "fastened [plaintiff's] handcuffs so
19 tightly around his wrist that they caused [plaintiff] pain and left bruises that lasted for
20 several weeks" and "refus[ed] to loosen the handcuffs after [plaintiff] complained of the
21 pain," officer not entitled to summary judgment on excessive force claim); Hansen v. Black,
22 885 F.2d 642, 645 (9th Cir. 1989) (holding plaintiff created triable issue of fact as to
23 whether arresting officers "unreasonably injured her wrist and arm as they handcuffed her,"
24 where plaintiff "visited the local medical center for treatment . . . and had bruises on her
25 wrist and under her upper arm, and she complained of pain in her little finger and upper
26 arm").

27 　　　Here, Fahy offers no evidence to support a finding that he sustained any injury as a
28 result of the application of the handcuffs, and, as noted, testified at his deposition that he

1 made no complaint about the use of the handcuffs at or after their application nor thereafter
2 sought medical care.[4]  Under such circumstances, no trier of fact could reasonably find the
3 use of handcuffs constituted excessive force.

4     Accordingly, the moving defendants have shown Officer Buelow and Sgt. Stocker
5 are entitled to summary judgment on the Third Claim for Relief.

### 4. Fourth Claim for Relief ("Excessive Force")

7     In his Fourth Claim for Relief, Fahy alleges the City violated § 1983 because it
8 "approved, sanctioned, or ratified" Officer Buelow's "unlawful use of excessive force."  (See
9 FAC ¶ 70.)

10     For the reasons discussed above, Fahy has failed to show he was subjected to
11 excessive force by Officer Buelow.  Consequently, he cannot establish a claim of municipal
12 liability based on his allegation of excessive force by Officer Buelow.  See Monell v. Dep't
13 of Social Services, 436 U.S. 658, 691 (1978) (holding municipality may not be held liable
14 under § 1983 "unless action pursuant to an official municipal policy of some nature caused
15 a constitutional tort").

16     Accordingly, the moving defendants have shown the City is entitled to summary
17 judgment on the Fourth Claim for Relief.

### 5. Fifth Claim for Relief ("Supervisory Liability")

19     In his Fifth Claim for Relief, Fahy, incorporating the allegations made in his First
20 through Fourth Claims for Relief, alleges the City is liable for depriving him of his federal
21 constitutional rights.

22     As discussed above, Fahy has failed to show either Officer Buelow or Sgt. Stocker
23 deprived him of a federal right, and, consequently, fails to show the City is liable for the
24 actions of either individual defendant.  See id.

25     Accordingly, the moving defendants have shown the City is entitled to summary

---

[4] In support of his opposition, Fahy offers no evidence pertaining to the application of the handcuffs.  Consequently, the sole evidence relevant to said issue is Fahy's deposition testimony offered by the moving defendants.

6

judgment on the Fifth Claim for Relief.

### 6. Sixth Claim for Relief ("Deprivation of Medical Care")

In his Sixth Claim for Relief, Fahy includes a claim that Officer Buelow, Sgt. Stocker, and the City, in violation of § 1983, deprived Fahy of medical care while he was detained at the police station following his arrest and prior to his being transported to the county jail.[5] The moving defendants argue that Fahy's deposition testimony establishes he lacks evidence to create a triable issue of fact as to said claim, and, in particular, that Fahy lacks evidence to show either Officer Buelow or Sgt. Stocker knew of and deliberately disregarded a serious risk to Fahy's health.

At his deposition,[6] Fahy testified that after leaving the scene of the subject automobile accident, Fahy went to a scheduled medical appointment, where he received "laser surgery" on one eye, and that, after the surgery, his physician gave him a prescription and advised him to take the medication within four hours; Fahy testified that he understood the medication was "to stop bleeding and to prevent residual problems resulting from the laser surgery." (See Lewis Decl. Ex. A at 31:12-17, 40:7-14, 41:24 - 42:2.) Fahy also testified that "[a]bout an hour after [he] was in custody" at the police station, he told Sgt. Stocker that he "need[ed] his medication," but that he did not provide any other information to Sgt. Stocker. (See id. Ex. A at 177:21-178:14.) Fahy further testified that he told Officer Buelow he needed his medication. (See id. Ex. A at 178:15-23.)

Pretrial detainees have a due process right "to not have officials remain deliberately indifferent to their serious medical needs." See Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal quotation and citation omitted). A state actor deprives

---

[5]The Sixth Claim for Relief also includes a state law claim based on the same alleged deprivation of medical care at the police station. (See FAC ¶ 78.)

[6]In support of his opposition to the instant motion, Fahy cites no evidence pertaining to his claim that he was deprived of medical care while at the police station, and, consequently, the sole evidence relevant to said claim is Fahy's deposition testimony offered by the moving defendants.

7

a pretrial detainee of such right "only if the person knows of and disregards an excessive risk to [the pretrial detainee's] health and safety." See id. (internal quotation and citation omitted). "If a person should have been aware of the risk, but was not, then the person has not violated the [Due Process Clause] no matter how severe the risk." Id. at 1188.

Here, as noted, Fahy testified he told both Officer Buelow and Sgt. Stocker that he needed medication. The record includes no evidence, however, in Fahy's deposition testimony or otherwise, that Fahy advised either Officer Buelow or Sgt. Stocker that "a substantial risk of serious harm exist[ed]" if he did not take the medication during the time he remained at the police station awaiting transport to the county jail. See id. (internal citation and quotation omitted); see also Farmer v. Brennan, 511 U.S. 825, 838, 841-42 (1994) (holding "an official's failure to alleviate a significant risk that he should have perceived but did not" does not constitute "deliberate indifference"; rejecting argument that "deliberate indifference" can be shown where defendant "who was unaware of a substantial risk of harm to an inmate may nevertheless be held liable . . . if the risk was obvious and a reasonable prison official would have noticed it"). Nor does Fahy point to any evidence in the record from which a trier of fact could reasonably infer, in the absence of any statement by Fahy with respect to the potential effects of or risks attendant to his not taking the medication while at the police station, that Officer Buelow or Sgt. Stocker nonetheless knew that a serious risk existed. Cf., e.g., Lolli v. County of Orange, 351 F.3d 410, 420-21 (9th Cir. 2003) (holding, where pretrial detainee told officers he was diabetic and needed food but did not expressly identify nature of risk posed by lack of food, trier of fact could reasonably infer defendants knew serious risk to plaintiff's health existed if he did not receive food, in light of plaintiff's exhibiting "noticeable shaking, disorientation, sweating and pallor" at time he requested food).

In sum, evidence that Fahy advised Officer Buelow and Sgt. Stocker that he needed medication, without more, is insufficient as a matter of law to support a claim for deliberate indifference. See, e.g., Gibson, 290 F.3d at 1184, 1196-97 (holding, where pretrial detainee died of heart attack resulting from "physiologically stressful state" occurring while

1 deputies attempted to restrain him, deputy sheriff who knew that "drug containers came
2 into the jail with [the plaintiff], but did not know what the medications were, or their
3 purpose," was entitled to summary judgment as to claim he "showed deliberate indifference
4 to [the decedent's] serious mental health condition"); see also Lolli, 351 F.3d at 421
5 (holding, to create triable issue of fact as to claim for deliberate indifference, plaintiff must
6 offer evidence that defendants not only knew of plaintiff's condition and need for medical
7 care, but also "knew of the risk of harm that he faced if denied medical attention").[7]

Moreover, because Fahy has failed to show evidence exists that could support a finding that either Officer Buelow or Sgt. Stocker were deliberately indifferent to a serious risk to Fahy's health, Fahy likewise has failed to show the City can be found liable under § 1983 for a claim of deliberate indifference. See Monell, 436 U.S. at 691.

Accordingly, the moving defendants have shown Officer Buelow, Sgt. Stocker, and the City are entitled to summary judgment on the Sixth Claim for Relief.

**7. Seventh Claim for Relief ("Malicious Prosecution")**

In his Seventh Claim for Relief, Fahy alleges, as against Officer Buelow, Sgt. Stocker, and the City, a claim for "malicious prosecution," which claim is based on the allegation that Fahy was unlawfully arrested and subsequently detained in the county jail. The moving defendants argue Fahy cannot establish the essential elements of a malicious prosecution claim.

To the extent the Seventh Claim for Relief is brought pursuant to § 1983,[8] the claim fails as a matter of law because there is no evidence, nor even allegation, that any criminal charges were ever filed against Fahy, let alone that institution of such charges was "wrongful." See Wallace v. Kato, 549 U.S. 384, 389-90 (2007) (explaining claim for "false

---

[7] Additionally, it is undisputed that Fahy did receive the medication later the same evening. (See Lewis Decl. Ex. A at 41:16-19.)

[8] Fahy does not indicate in the FAC whether the Seventh Claim for Relief is brought under federal law or state law, or both. Because a claim for malicious prosecution may be brought under both federal and state law, see, e.g., Usher v. City of Los Angeles, 828 F.2d 556, 561-62 (9th Cir. 1987), the Court construes the Seventh Claim for Relief to seek relief under both federal and state law.

9

arrest" is "entirely distinct" from claim of "malicious prosecution," the latter of which requires showing of "wrongful institution of judicial process"); Usher v. City of Los Angeles, 828 F.2d 556, 561-62 (9th Cir. 1987) (holding essential element of malicious prosecution claim under § 1983 is "initiation of criminal prosecution"). Indeed, Fahy alleges that no criminal charges were ever made against him. (See FAC ¶ 37.)

Accordingly, the moving defendants have shown Officer Buelow, Sgt. Stocker, and the City are entitled to summary judgment on the Seventh Claim for Relief to the extent said claim is brought pursuant to § 1983.

### 8. Eighth Claim for Relief ("False Imprisonment")

In his Eighth Claim for Relief, Fahy includes a claim that Sheriff Hennessey is liable under § 1983 (1) because deputies at the San Francisco Jail "retained him" even though they were "on notice that the arrest and detention of [Fahy] was unlawful" (see FAC ¶ 81), (2) because Fahy was subjected to a "strip search[ ]" (see FAC ¶ 82), (3) because Fahy was not provided "medical care" by jail staff (see id.), and (4) because Fahy was placed in a cell that was "overcrowded" and in another cell that was "cold" (see id.).[9]

As defendants point out, and Fahy does not dispute in his opposition, Fahy's claims concerning his detention at the county jail do not implicate any acts taken by Sheriff Hennessy personally. "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983." Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). To the extent Fahy's § 1983 claims against Sheriff Hennessey are alleged against him in his official capacity, specifically, that while Fahy was in the custody of deputy sheriffs, he was deprived of his federal rights as a result of a City policy or a policy of the Sheriff's Department, the moving defendants argue Fahy cannot establish a claim because Fahy has failed to show he was deprived of any federal right while detained at the county jail. The Court agrees.

---

[9]The Eighth Claim for Relief also seeks relief under state law for the same conduct. (See FAC ¶ 85.)

10

1       First, to the extent Fahy contends his detention by deputy sheriffs was unlawful under federal law, Fahy cannot establish such claim; as discussed above, probable cause existed to arrest Fahy for a violation of section 20002(a) of the California Vehicle Code.

       Second, to the extent Fahy contends his federal rights were violated because he was strip searched at the county jail, Fahy cannot, as a matter of law, establish his claim. See Bull v. City and County of San Francisco, 595 F.3d 964, 966, 982 (2010) (finding San Francisco's policy of conducting strip search of all arrestees before they are "introduced" into county jail population is constitutional).[10]

       Third, to the extent Fahy contends he was deprived of medical care while at the county jail, Fahy cannot establish a federal claim of deliberate indifference. Fahy acknowledged at his deposition that (1) when he notified the "person [who] dealt with medical information" at the jail that he "had surgery that day earlier" and "might be injured" if he did not obtain his medication, the "medical person" stated "she would get the medication" (see Lewis Decl. Ex. A at 99:3-25, 103:2-6); (2) a call was then made to Fahy's wife (see id. Ex. A at 103:23 - 104:3); (3) Fahy was next taken to a cell, where he was advised he had made bail (see id. Ex. A at 106:11-14); (4) Fahy "received it [the medication] after [he] was released from custody" (see id. Ex. A at 41:16-19); (5) Fahy did not seek medical attention or advice until his follow-up appointment "a couple months afterwards" (see id. Ex. A at 191:2-7); and (6) at his follow-up appointment with his physician, the physician checked him and advised him that there was "some extra bleeding, but not much" and that he was "okay" (see id. Ex. A at 191:2-24). Although it cannot be determined from Fahy's testimony whether it was the "medical person" herself who called Fahy's wife or whether Fahy made the call while he was with the "medical

//

---

[10]Upon being taken to the jail, Fahy initially was placed in a cell by himself, where he remained in his street clothes. (See Lewis Decl. Ex. A at 94:18-21, 95:14-15.) After about an hour, he was "taken out" of the first cell, "strip searched," given "the jail's orange clothes," and then placed in a cell with eight or nine other persons. (See id. Ex. A at 94:23-24, 95:14-15, 96:18 - 97:7.)

11

person,"[11] it is undisputed that Fahy thereafter did receive his medication, presumably from his wife upon his release on bail, and that, to the extent there was any delay, Fahy was not harmed thereby. Based on such undisputed facts, no trier of fact could reasonably find the "medical person," or any other jail employee, deprived Fahy of a federal right. See Estelle v. Gamble, 429 U.S. 97, 106 (1976) (holding, to establish federal claim that prison official deprived plaintiff of medical care, plaintiff must prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs"); Shapely, 766 F.2d at 407 (holding "delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

Fourth, and lastly, to the extent Fahy contends his federal rights were violated when he was placed in a cell he describes as "overcrowded" and in another cell he describes as "cold" (see FAC ¶ 82), Fahy lacks evidence to support a claim that his placement in those cells, or either of them, constituted, on the part of jail personnel, "'deliberate indifference' to a substantial risk of serious harm." See Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir.1998) (setting forth standard for federal claim that pretrial detainee was subjected to unconstitutional conditions of confinement). An "overcrowding claim" is cognizable under federal law only where the "overcrowding is combined with other factors such as violence or inadequate staffing," see Dean v. Arpaio, 382 Fed. Appx. 585, 586 (9th Cir. 2010), and Fahy concedes he was not attacked or otherwise subjected to physical harm while in the jail (see Lewis Decl. Ex. A at 135:4-24); Fahy's testimony that he could not use the phone in the "overcrowded" cell because other detainees were using it (see id. Ex. A at 97:1-98:20) is insufficient as a matter of law to constitute the type of deprivation as to which a deliberate indifference claim can be based. See Frost, 152 F.3d at 1128 (holding § 1983 claim cannot be based on condition of jail cell, unless pretrial detainee is deprived of "minimal civilized measures of life's necessities"). Fahy's testimony that he was in a "cold"

//

---

[11]At his deposition, Fahy could not recall who telephoned his wife. (See id.)

cell for approximately two hours (see Lewis Decl. Ex. A at 112:11-20, 113:12-13),[12] without more, likewise is insufficient to constitute the type of deprivation necessary to support a deliberate indifference claim. See Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996) (holding, where plaintiff based claim on temperature of cell, summary judgment against plaintiff was proper where plaintiff's showing was only that "average temperature in his cell tended to be either well above or well below room temperature"); see also Frost, 152 F.3d at 1130 (finding "without merit" pretrial detainee's "complain[t] about the temperature in his cell," where plaintiff failed to show such circumstance "ultimately deprived him of the minimal civilized measures of life's necessities").

Accordingly, the moving defendants have shown Sheriff Hennessey is entitled to summary judgment on the Eighth Claim for Relief.

### 9. Ninth Claim for Relief ("Supervisory Liability")

In his Ninth Claim for Relief, Fahy alleges Sheriff Hennessey violated federal law because he "should have known that the wrongful conduct alleged [in the Eighth Claim for Relief] was likely to occur." (See FAC ¶¶ 86, 90.)

For the reasons stated above, Fahy has failed to show any jail personnel deprived Fahy of a federal right. Consequently, even assuming a "should have known" standard is applicable to any federal claim alleged by Fahy, Fahy cannot establish a claim against Sheriff Hennessey.

Accordingly, the moving defendants have shown Sheriff Hennessey is entitled to summary judgment on the Ninth Claim for Relief.

### 10. Tenth Claim for Relief ("Deprivation of Rights Under Color of Law")

In his Tenth Claim for Relief, Fahy, incorporating the allegations made in the First through Ninth Claims for Relief, alleges that each named defendant, other than Steiner, has deprived Fahy of a federal right.

For the reasons stated above, Fahy has failed to show any named defendant

---

[12] At his deposition, Fahy stated he "[didn't] know how cold it was"; when asked, "Could you see your breath?," he answered "no." (See id. Ex. A at 112:14-20.)

13

deprived him of a federal right.

Accordingly, the moving defendants have shown they are entitled to summary judgment on the Tenth Claim for Relief.

### 11. Eleventh Claim for Relief ("Failure to Train")

In his Eleventh Claim for Relief, Fahy alleges the City and Sheriff Hennessey are liable for failing to train employees, and that such failures caused Fahy to be improperly arrested, imprisoned, and otherwise deprived of his rights. (See FAC ¶¶ 93, 96.)

To the extent the Eleventh Claim for Relief is brought pursuant to § 1983,[13] Fahy, for the reasons set forth above, has failed to show he was deprived of a federal right.

Accordingly, the moving defendants have shown the City and Sheriff Hennessey are entitled to summary judgment on the Eleventh Claim for Relief.

### 12. Twelfth Claim for Relief ("Violation of California Law")

Fahy's Twelfth Claim for Relief does not include any claim arising under federal law.

### 13. Thirteenth Claim for Relief ("Failure to Intercede")

In his Thirteenth Claim for Relief, Fahy alleges Sheriff Hennessey violated § 1983 by not intervening to preclude Fahy from being deprived of his federal rights by jail employees.

For the reasons stated above with respect to the Eighth Claim for Relief, Fahy has failed to show any jail employee deprived Fahy of a federal right.

Accordingly, the moving defendants have shown Sheriff Hennessey is entitled to summary judgment on the Thirteenth Claim for Relief.

### 14. Fourteenth Claim for Relief ("Denial of Medical Care")

In his Fourteenth Claim for Relief, Fahy alleges Officer Buelow, Sgt. Stocker, Sheriff Hennessey, and the City violated § 1983 by refusing to provide medical treatment to him.

---

[13]Fahy does not indicate in the FAC whether the Eleventh Claim for Relief is brought under federal law or state law, or both. Because a claim based on a failure-to-train theory may be brought under both federal and state law, see, e.g., Gomez v. City of Fremont, 730 F. Supp. 2d 1056, 1058, 1069-70 (N.D. Cal. 2010), the Court construes the Eleventh Claim for Relief to seek relief under both federal and state law.

For the reasons stated above with respect to the Sixth and Eighth Claims for Relief, Fahy has failed to show any defendant violated § 1983 by depriving Fahy of medical treatment.

Accordingly, the moving defendants have shown they are entitled to summary judgment on the Fourteenth Claim for Relief.

**B.  State Law Claims**

The Twelfth Claim for Relief, as noted, consists solely of claims arising under state law, and certain of the other claims, specifically, the Sixth, Seventh, Eighth and Eleventh Claims for Relief, include claims arising under state law.

Because the parties are not diverse, the Court's jurisdiction over the instant action is based on Fahy's federal claims. To the extent the Court has jurisdiction over the state law claims, such jurisdiction is supplemental in nature. See 28 U.S.C. § 1367(a).

A district court may decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction." See 28 U.S.C. § 1367(c)(3). Where a district court has granted summary judgment on the sole federal claims, the district court, pursuant to § 1367(c)(3), may properly decline to exercise supplemental jurisdiction over the remaining state law claims. See Bryant v. Adventist Health System/West, 289 F.3d 1162, 1169 (9th Cir. 2002).

Here, having considered the matter, and in light of the resolution of each of the federal claims, the Court finds it appropriate to decline to exercise jurisdiction over Fahy's state law claims, pursuant to § 1367(c)(3).

**CONCLUSION**

For the reasons stated above:

1. The motion for summary judgment, filed by Officer Buelow, Sgt. Stocker, Sheriff Hennessey, and the City, is hereby GRANTED in part; specifically, summary judgment is hereby granted in favor of said defendants on each federal claim alleged in the First Amended Complaint.

2. Summary judgment is hereby granted in favor of defendant Steiner.

3. Fahy's state law claims are hereby DISMISSED without prejudice, pursuant to 28 U.S.C. § 1367(c)(3).

The Clerk shall close the file and terminate all pending motions.

**IT IS SO ORDERED.**

Dated: August 25, 2011

_____
MAXINE M. CHESNEY
United States District Judge